United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   RICHARD DIAZ,                    No C 07-2612 VRW (PR)

12            Petitioner,
                                      ORDER DENYING PETITION FOR A
13        v                           WRIT OF HABEAS CORPUS

14   DERRAL ADAMS, Warden,

15            Respondent.

16   _____/

17

18        Richard Diaz seeks a writ of habeas corpus under 28 USC

19   section 2254, which for the reasons that follow, the court denies.

20        On November 18, 2002, petitioner was charged with three

21   counts in an amended information filed in the superior court for

22   Monterey County: (1) second degree robbery in violation of

23   California Penal Code section 211; (2) grand theft in violation of

24   California Penal Code section 487(c); and (3) unlawful use of a

25   badge in violation of California Penal Code section 538(b)(2).  In

26   addition, the information alleged that petitioner had suffered three

27   prior strike convictions under California Penal Code section 1170.12

28   and one prior serious felony conviction under California Penal Code

section 667(a).

There were two jury trials in this matter.  The first took place in December 2002.  Before the jury was empaneled, the prosecution dismissed the grand theft charge.  The jury found petitioner guilty of unlawful use of a badge, but was unable to reach a verdict on the robbery charge.  The trial court declared a mistrial as to that count.

On April 10, 2003, in a second trial, the jury convicted petitioner of second degree robbery.  The court also found true the allegation that petitioner had three prior strike convictions of robbery and one prior serious felony conviction of robbery.

On June 25, 2003, the trial court exercised its discretion and struck two of the three prior strike convictions and sentenced petitioner to 15 years.  The sentence for robbery included the upper term of five years, doubled for the one prior strike conviction pursuant to the Three Strikes Law, California Penal Code section 667(b), and a five year enhancement for the one prior serious felony conviction.  On the unlawful use of a badge conviction, the trial court imposed a concurrent county jail sentence of 365 days.

On August 21, 2005, the California Court of Appeal stayed the county jail sentence pursuant to California Penal Code section 654 and affirmed the judgment in all other respects.  On that same date, the court also summarily denied petitioner's request for state habeas relief based on a claim of ineffective assistance of counsel.

On June 29 and July 27, 2005, the Supreme Court of California denied review, and, on February 20, 2007, the Supreme Court of the United States denied certiorari.

2

On May 16, 2007, petitioner filed the instant federal petition for a writ of habeas corpus under 28 USC § 2254.  The court found that it stated cognizable claims for relief, when liberally construed, and ordered respondent to show why a writ of habeas corpus should not be granted.  Respondent has filed an answer. Petitioner did not file a traverse.

I

The California Court of Appeal summarized the factual background of the case as follows:

> The victim, Arthur Peralta, age 55, was born in the Philippines and has lived in Salinas since 2000.  He understands some English, but speaks Tagalog in the home.  His trial testimony was given through a Tagalog interpreter.
>
> The Robbery
>
> According to Peralta's trial testimony, the incident involving defendant took place on September 3, 2002.  Peralta drove his van to an adult bookstore in Salinas to see a friend who worked there, in order to make an appointment for the friend to cut his hair.  He parked in front of a Long's drugstore.  When Peralta arrived, it was after 10:00 pm, and he recalled that his friend only worked until 5:00 pm.  He then decided to buy napkins at Long's, but the drugstore was closed.
>
> As Peralta was sitting in his van, four women approached him in another vehicle.  The woman in the passenger seat asked Peralta if he wanted sex.  The driver, who had blonde hair, then told him to follow her if he wanted sex.  Peralta followed the women's vehicle to the front of a school, where both vehicles parked.  At that location, the blonde woman discussed the transaction with Peralta.  She asked if he had money, and Peralta said yes.  He got out of his vehicle and followed the blonde woman onto the school grounds and behind a school building.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

When Peralta and the blonde woman got behind the school building, two men came towards them.  One of the men was defendant.  Defendant wore a badge on his chest area and carried a flashlight in his hand.  He spoke to Peralta, saying, "I'm a policeman.  I want your ID." Peralta took out his wallet and defendant grabbed it.  The wallet had both American and Philippine cash in it.

Peralta tried to grab his wallet back, but he was unsuccessful because defendant hit him on the head with a hard object and he became dizzy. Defendant also told the blonde woman to use a stun gun on Peralta, which made him feel weak. At some point during the struggle, Peralta lost his dentures.  After using the stun gun, defendant and the blonde woman ran away. Peralta chased them and saw defendant drop the wallet and a knife near the school gate. Peralta picked up the knife because he was afraid they would stab him with it.  As he did so, he saw defendant pick up the wallet and throw it to the blonde woman.

After defendant and the blonde woman left the area, Peralta returned to his van and drove to a street corner where he told a passerby he had been robbed.  That person called police on a cell phone.  Officer Godwin responded and Peralta told him that someone had stolen his wallet.  Peralta also gave the officer a knife. They went back to the school grounds where Officer Godwin recovered Peralta's ATM card, dentures and identification card.  Both the ATM card and the identification card were in Peralta's wallet before the incident involving defendant.  Peralta also received medical treatment from paramedics, including an ice pack for his head injury.

Peralta gave a description of the perpetrator to Officer Godwin that he relayed to other police officers.  Officer Godwin then took Peralta to look at a man who might have been involved in the robbery.  Peralta did not recognize the man. Next, Officer Godwin showed Peralta a man who was standing near the school grounds.  Peralta identified the man as the one who had robbed him.  At that time, defendant was wearing a security officer's badge around his neck.

Officer Sanchez spotted defendant as defendant

4

was walking in the vicinity of the school.
Officer Sanchez followed defendant into a motel,
where he made contact and observed that
defendant was wearing a security officer's
badge.  Officer Sanchez asked defendant to
accompany him to a street corner to meet another
officer.  As they walked, Officer Sanchez
noticed the badge was no longer visible.  When
Officer Godwin and Peralta met them at the
street corner, defendant removed the badge from
underneath his sweatshirt at Officer Sanchez's
request.

After Peralta identified defendant as the
perpetrator, a third officer, Officer Vance,
told defendant he was under arrest.  Defendant
responded that the only wallet he had was his
own.  Until that time, no one had said anything
about a missing wallet in defendant's presence.

The Police Investigation

After defendant was placed under arrest, a
friend of Peralta's arrived.  The friend
assisted in translating some of Peralta's
statement to Officer Godwin.  However, before
the friend provided any assistance, Peralta gave
Officer Godwin an account of the robbery that
was different from the version Peralta later
gave at trial.  Peralta stated that he had
stopped his van in response to a woman flagging
him down and asking him about sex.  Three women
came to the driver's side window to talk to
Peralta.  As Peralta was talking to the women,
defendant also came to the driver's side window
and asked Peralta for identification.  Peralta
took his wallet out in order to get his
identification.  As he did so, defendant reached
in the van and grabbed the wallet.  Defendant
also reached for a knife in his waistband, but
Peralta took the knife first.  Defendant then
ran into the school grounds, where Peralta
struggled with him to get the wallet back.

Officer Godwin also interviewed defendant.
Defendant said that he worked as a security
guard at a motel near the school where the
robbery took place.  He initially stated that he
had witnessed the robbery, which had been
committed by his brother, another man named
Freddy Moreno, and a blonde girl.  Defendant
then stated that some months ago he, his
brother, and Freddy Moreno had worked with a

United States District Court
For the Northern District of California

5

girl to "jack jags." "Jack" means to rob
someone, and "jag" is a derogatory term for a
Hispanic person.  The scheme involved offering
the potential victim a soda or a date, meaning
an act of prostitution. Defendant's role was to
use a badge, rather than force, to take the
victim's property.

During the interview, defendant gave Officer
Godwin a second statement about the incident.
He explained that he "blew it" and struck
Peralta on the head with a large flashlight
after seeing Peralta in the schoolyard with
defendant's mentally retarded, 18-year-old
daughter or stepdaughter.  Peralta had his
wallet in one hand and money in the other hand
and was reaching for the young woman.
Defendant's knife fell out of his pocket during
the confrontation. Defendant acknowledged that
he might have picked up Peralta's wallet and
thrown it away from him, before running away.

Defendant then gave a third statement about the
incident to Officer Godwin.  Defendant said that
he thought that Peralta was soliciting his
daughter, Victoria S, for prostitution.  He
approached Peralta, showed him his badge, and
asked for identification.  At that point,
defendant became upset and struck Peralta on the
head with his flashlight.

After the interview, Officer Godwin went to
defendant's apartment to look for Victoria S.
The apartment was on the first floor and Officer
Godwin was able to look through a window and see
inside defendant's room.  He saw a stun gun
lying on top of the bed.

People v Diaz, No H026161, 2005 WL 941402, at **2-4 (Cal Ct App Apr
21, 2005).

II

A federal writ of habeas corpus may not be granted with
respect to any claim that was adjudicated on the merits in state
court unless the state court's adjudication of the claim:  "(1)

6

resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or (2)
resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
State court proceeding."  28 USC § 2254(d).

"Under the 'contrary to' clause, a federal habeas court
may grant the writ if the state court arrives at a conclusion
opposite to that reached by [the Supreme] Court on a question of law
or if the state court decides a case differently than [the] Court
has on a set of materially indistinguishable facts."  Williams v
Taylor, 529 US 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal
habeas court may grant the writ if the state court identifies the
correct governing legal principle from [the] Court's decisions but
unreasonably applies that principle to the facts of the prisoner's
case."  Id at 413.  The Supreme Court has made clear that "a federal
habeas court may not issue the writ simply because that court
concludes in its independent judgment that the relevant state-court
decision applied clearly established federal law erroneously or
incorrectly.  Rather, that application must also be unreasonable."
Id at 411.  A federal habeas court making the "unreasonable
application" inquiry should ask whether the state court's
application of clearly established federal law was "objectively
unreasonable."  Williams, 529 US at 409.

The only definitive source of clearly established federal
law under 28 USC section 2254(d) is in the holdings, as opposed to

**7**

the dicta, of the Supreme Court as of the time of the state court decision.  Id at 412; <u>Clark v Murphy</u>, 331 F3d 1062, 1069 (9th Cir 2003).  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied.  Id.

III

Petitioner seeks habeas relief under 28 USC section 2254 based on six claims:  (1) he was denied due process because the trial court failed to provide a jury instruction on unanimity; (2) he was denied due process because the trial court instructed the jury on an inapplicable theory of liability; (3) he was denied due process because the trial court erroneously admitted character evidence; (4) he was denied due process because there was insufficient evidence to support his conviction for unlawful use of a badge; (5) he was denied his right to effective assistance of counsel due to counsel's failure to file a suppression motion; and (6) he was denied his Sixth and Fourteenth Amendment rights due to the trial court's imposition of the upper term sentence without the benefit of a jury trial or the proof beyond a reasonable doubt standard.

A

Petitioner claims that the trial court violated his due process rights when it failed to give the jury CALJIC No 17.01, the

8

instruction on unanimity.  Petitioner argues that the instruction was required because two conflicting stories were presented to the jury.

**1**

The California Court of Appeal provided the following background for petitioner's claim:

> Defendant asserts that the trial court's failure to sua sponte give the standard unanimity instruction, CALJIC No 17.01, constitutes reversible error.  FN2  The record reflects that defendant did not ask the trial court to give CALJIC No 17.01.  However, defendant may raise the issue on appeal because, absent a request by the defendant, the trial court has a duty to give the instruction "'where the circumstances of the case so dictate.'"  <u>People v Riel</u> (2000) 22 Cal4th 1153, 1199, quoting <u>People v Carrera</u> (1989) 49 Cal 3d 291, 311, fn 8.

> FN2. CALJIC No 17.01 (6th ed 1996) provides: "The defendant is accused of having committed the crime of _____ [in Count _____]. The prosecution has introduced evidence for the purpose of showing that there is more than one [act][or] [omission] upon which a conviction [on Count _____] may be based. Defendant may be found guilty if the proof shows beyond a reasonable doubt that [he][she] committed any one or more of the [acts] [or] [omissions]. However, in order to return a verdict of guilty [to Count _____], all jurors must agree that [he][she] committed the same [act][or] [omission] [or] [acts] [or] [omissions]. It is not necessary that the particular [act][or] [omission] agreed upon be stated in your verdict."

> The unanimity instruction arises from the state constitutional requirement that a jury verdict in a criminal case be unanimous.  <u>People v Russo</u> (2001) 25 Cal4th 1124, 1132; Cal Const, art I, § 16.  For the verdict to be unanimous, the jury must agree that the defendant is guilty of a

**United States District Court**

For the Northern District of California

9

United States District Court

For the Northern District of California

specific crime.  "Therefore, cases have long
held that when the evidence suggests more than
one discrete crime, either the prosecution must
elect among the crimes or the court must require
the jury to agree on the same criminal act."  Id
at 1132.

Defendant contends that the trial evidence
revealed two possible factual scenarios for the
robbery and therefore CALJIC No 17.01 was
required.  In one version given to police,
Peralta said that defendant grabbed the wallet
from his hand while Peralta was seated in his
van.  Peralta then pursued defendant into the
schoolyard where defendant used force to retain
possession of the wallet.  In the second
version, defendant told Officer Godwin that he
struck Peralta because Peralta was
propositioning his daughter for sex, then took
the wallet.

Thus, according to defendant, "[t]he jury heard
evidence that the wallet was taken: (1) without
force while Mr Peralta sat in his vehicle; or
(2) after the use of force at the schoolyard.
Since these acts occurred at different locations
and under different factual scenarios, the court
had a duty to give [CALJIC] No 17.01." Defendant
also argued that he had asserted a different
defense to each factual scenario.

The People see the evidence differently. While
conceding that the evidence contains conflicting
accounts of the robbery, the People urge that
only one course of conduct was involved and any
factual discrepancies are legally irrelevant.
The People also point out that defendant
asserted only one defense at trial: that
Peralta's versions of the incident lacked
credibility, and defendant's least culpable
version (whereby defendant assaulted Peralta in
the schoolyard but did not take his wallet)
should be accepted. Accordingly, they contend
that a unanimity instruction was not required.

People v Diaz, 2005 WL 941402, at **4-5 (footnote in original).

    The California Court of Appeal found no error in the trial

court's failure to give the unanimity instruction.  The court

stated:

10

As the California Supreme Court has explained, "where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." People v Russo, supra, 25 Cal4th at 1132. Here, the prosecution's closing argument illustrates that the evidence in this case shows only a single discrete crime: "Whether the defendant hit the victim over the head and then took his wallet or whether he took his wallet and then hit him over the head doesn't matter because either way, the robbery is continuing."

Thus, the evidence showed there was only one possible robbery offense, defendant's seizure of Peralta's wallet by force, arising from one continuous course of conduct. The jurors were not required to unanimously decide exactly how the crime occurred, ie, whether the defendant used force before or after grabbing the wallet, or whether defendant grabbed the wallet while Peralta was in his car or in the schoolyard. Therefore, the circumstances of this case do not require a unanimity instruction.

People v Diaz, 2005 WL 941402, at **5-6.

2

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the challenged instruction by itself so infected the entire trial that the resulting conviction violates due process. Estelle v McGuire, 502 US 72, 72 (1991). Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury. See Duckett v Godinez, 67 F3d 734, 745 (9th Cir 1995). Furthermore, the omission of an instruction is less likely to be prejudicial than a misstatement of the law. See Walker v Endell, 850 F2d 470, 475-76 (9th Cir 1987). A habeas petitioner whose claim involves a failure

11

to give a particular instruction bears an "especially heavy burden." Villafuerte v Stewart, 111 F3d 616, 624 (9th Cir 1997) (internal quotations marks omitted).

Even if failure to give a particular jury instruction amounts to a violation of due process, habeas relief may be granted only if the error had a substantial and injurious effect on the verdict.  See Brecht v Abrahamson, 507 US 619, 637 (1993).  In other words, the error must have resulted in "actual prejudice."  Id.

3

The California Court of Appeal's rejection of petitioner's claim that the trial court violated his due process rights when it did not issue the unanimity instruction was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, and neither was it based on an unreasonable determination of the facts.  See 28 USC § 2254(d).

The California Court of Appeal determined that under California law, the instruction was not necessary because there was only one theory of the offense.  See People v Diaz, 2005 WL 941402, at *5.  Insofar as petitioner's claim is that there was a violation of his due process rights because the California courts erred in interpreting state law, federal habeas relief is unavailable.  A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  See Estelle, 502 US at 71-72.

Petitioner is not entitled to federal habeas relief based on federal law.  The federal Constitution does not require that a

12

United States District Court

For the Northern District of California

jury agree "on the preliminary factual issues which underlie the verdict." <u>Schad v Arizona</u>, 501 US 624, 631-32 (1991).  The California Court of Appeal determined that although it was possible to disagree when petitioner took the wallet or applied force, there was only a single discrete crime that could have been committed, and, therefore, it was not necessary to give a unanimity instruction.  The state court's determination was not an objectively unreasonable application of clearly established federal law.  Accord <u>United States v Fejes</u>, 232 F3d 696, 702 (9th Cir 2000) (stating that a court need not instruct jury that single set of facts must be agreed upon).  The state court did not commit error in failing to, sua sponte, issue the unanimity instruction.

B

Petitioner claims that he was denied due process because the trial court erred in giving the standard instruction for aiding and abetting a robbery, when the prosecution's theory was that petitioner was the direct perpetrator of the robbery.  As given, CALJIC No 9.40.1 stated:

> The commission of the crime of robbery is not confined to a fixed place or a limited period of time and continues as long as the stolen property is being carried away to a place of temporary safety.

<u>People v Diaz</u>, 2005 WL 941402, at *6.  Petitioner argues that the instruction allowed the jury to find that he was guilty of robbery on the basis of after-acquired intent to steal.

//

//

13

United States District Court
For the Northern District of California

1

1

2    The California Court of Appeal found that the trial court

3 erred in giving the instruction, but concluded that the error was

4 harmless.  The court explained that:

5           [e]ven if CALJIC No 9.40.1 allowed the jury to
            convict defendant on the basis of after-
6           acquired intent to commit robbery, we see
            nothing in the record to show that the jurors
7           convicted defendant on that ground.  The trial
            court gave jury instructions clarifying that
8           the jury could not convict defendant of robbery
            on the basis of after-acquired intent to steal.
9           CALJIC No 9.40, the standard robbery
            instruction, was given: "Every person who takes
10          personal property in the possession of another
            against the will and from the person or
11          immediate presence of that person accomplished
            by means of force or fear and with the specific
12          intent permanently to deprive the person of the
            property is guilty of the crime of robbery, in
13          violation of Penal Code section 211."

14          In addition, CALJIC No 9.40.2, as given,
            instructed the jury: "To constitute the crime
15          of robbery, the perpetrator must have formed
            the specific intent to permanently deprive the
16          owner of his property before or at the time of
            the taking-at the time of the taking of the
17          property occurred.  If the intent was not
            formed until after the property was taken from
18          the person or immediate presence of the victim,
            the crime of robbery has not been committed."
19

20 People v Diaz, 2005 WL 941402, at *7 (footnote omitted).

21    The court of appeal found that CALJIC No 9.40.1 did not

22 render the jury instructions "misleading as a whole."  Id.  The

23 jury was expressly instructed that it could not convict petitioner

24 of robbery based on after-acquired intent.  Id.  It was also

25 instructed with CALJIC No 17.31, which provides in relevant part:

26 "Whether some instructions apply will depend on what you find to be

27 the facts.  Disregard any instruction which applies to facts

28                                14

determined by you not to exist."  People v Diaz, 2005 WL 941402, at *7.

The court of appeal also found that there was ample evidence that petitioner took the victim's wallet by means of force and with the intent to permanently deprive him of it.  Id.

The court of appeal concluded that reversal was not required because "nothing in the record * * * show[s] that the sole basis of the verdict of guilt on the robbery count was the invalid ground of after-acquired intent to steal."  Id.

2

When evaluating whether there has been a constitutional violation based on instructional error, the challenged instruction must not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Estelle, 502 US at 72.  The federal court must review the instruction in the light of whether the jury was reasonably likely to interpret the instruction in an unconstitutional manner.  Id.

If constitutional error is found, the court also must find that the error had a substantial and injurious effect or influence in determining the jury's verdict before granting relief in habeas proceedings.  See Calderon v Coleman, 525 US 141, 146-47 (1998) (citing Brecht, 507 US at 637).

3

The California Court of Appeal's finding that the erroneous jury instruction was not reversible error was not

15

United States District Court
For the Northern District of California

contrary to, nor did it involved an unreasonable application of, clearly established Supreme Court precedent, and neither was it based on an unreasonable determination of the facts.  See 28 USC § 2254(d).

Even though the trial court erred under California law by giving CALJIC No 9.40.1, the error cannot be said to have so infected the trial that it violated petitioner's due process rights.  The jury was properly instructed on the elements of robbery, expressly instructed that it could not convict petitioner based on after-acquired intent and cautioned to disregard any instructions that contradicted facts found by the jury.  Taking into account all of the jury instructions, it cannot be said that the jury applied the instructions in an unconstitutional manner.  See Estelle, 502 US at 72.

C

Petitioner claims that he was denied due process because the trial court erred in admitting evidence of statements he made to police officers regarding uncharged criminal conduct.  The statements consisted of petitioner's admission of participation in a "jacking jags" scheme, which meant "robbing field worker type Hispanics."  People v Diaz, 2005 WL 941402, at *8 (internal quotation marks omitted).  This scheme involved defendant and a female accomplice; petitioner's role was to use a badge to take the victim's property.  Id.  The prosecution argued that the "jacking jags" statement was evidence of a common plan or design that petitioner had also employed in committing the robbery in this

16

1    case.   Id at *9.

3                                 1

4            The California Court of Appeal rejected petitioner's

5    claim that the statements were unduly prejudicial to petitioner and

6    found no abuse of discretion in the trial court's admission of the

7    evidence.   The court explained:

> Under the standard established by our Supreme
> Court, there was sufficient similarity between
> the "'jacking jags'" scheme and the current
> robbery offense to admit the uncharged offense
> evidence on the issue of intent. "The least
> degree of similarity is required to establish
> relevance on the issue of intent. [Citation.]
> For this purpose, the uncharged crimes need
> only be sufficiently similar [to the charged
> offenses] to support the inference that the
> defendant probably harbor[ed] the same intent
> in each instance. [Citation.]" People v Kipp,
> supra, 18 Cal4th at 371 (quoting People v
> Ewoldt (1994) 7 Cal4th 380, 402).   Thus, the
> uncharged crimes need not be identical to the
> charged offenses.
>
> Here, there is a strong similarity between the
> uncharged criminal conduct and the charged
> offense.   The uncharged criminal conduct
> involved a scheme whereby defendant would steal
> property from individuals by working with a
> female accomplice, who would solicit an act of
> prostitution from the victim.   Defendant would
> then use a badge to obtain the victim's
> property without the use of force.   The charged
> offense likewise involved a female accomplice,
> a solicitation for an act of prostitution, and
> a police officer ruse.   According to Peralta's
> trial testimony, defendant worked with a blonde
> woman who solicited an act of prostitution from
> Peralta.   Defendant then appeared with a badge,
> identified himself as a police officer, and
> demanded Peralta's identification, which led to
> Peralta taking out his wallet and defendant
> grabbing it.   Thus, the charged and uncharged
> offenses are sufficiently similar to support
> the inference that, in each instance, defendant
> probably intended to steal the victim's

**United States District Court**
For the Northern District of California

property.

Defendant's reliance on People v Thompson (1980) 27 Cal3d 303, for a different result is misplaced.  In Thompson, the only similarity between the uncharged robbery of a restaurant employee in a restaurant parking lot and the charged home invasion burglary and robbery was the defendant's act of demanding and taking the victim's car keys.  People v Thompson, supra, 27 Cal3d at 321.  The California Supreme Court ruled, "Evidence that an individual intended to steal car keys on one occasion does not, by itself, substantially tend to prove that he intended to steal them on a second occasion." Ibid.  However, the facts of the present case are not analogous to facts in Thompson. The similarities between defendant's uncharged and charged criminal conduct are obviously much greater.

Finally, we are mindful of the "additional requirement for the admissibility of evidence of uncharged crimes: The probative value of the uncharged offense evidence must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury." People v Kipp, supra, 18 Cal4th at 371.  No such danger was present in this case.  The probative value of the evidence of the "jacking jags" scheme on the issue of intent was substantial in light of the defense theory that defendant had assaulted Peralta under the belief that Peralta was propositioning defendant's daughter, with no intent to steal.  Further, it was unlikely that the evidence of the uncharged offenses confused or misled the jury, given the simplicity of the "jacking jags" scheme and its similarity to the current offense.  The probative value of the uncharged offense evidence consequently outweighed the danger of undue prejudice.

People v Diaz, 2005 WL 941402, at **9-12.

2

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is

18

**United States District Court**

For the Northern District of California

violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. See <u>Henry v Kernan</u>, 197 F3d 1021, 1031 (9th Cir 1991).  Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.  Id; <u>Jammal v Van de Kamp</u>, 926 F3d 918, 919 (9th Cir 1991).  The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  See <u>Walters v Maass</u>, 45 F3d 1355, 1357 (9th Cir 1995).  Notably, however, only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process.  See <u>Jammal</u>, 926 F2d at 920.

Even if evidence was admitted at trial erroneously, petitioner must still how that the error had a substantial and injurious effect or influence in determining the jury's verdict before habeas relief can be granted.  <u>Brecht</u>, 507 US at 637.

3

The California Court of Appeal's finding that petitioner's statements regarding uncharged criminal conduct was admissible evidence to show intent was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, and neither was it based on an unreasonable determination of the facts.  See 28 USC § 2254(d).

This court cannot disturb the state trial court's admission of the statements because there were permissible inferences the jury could have drawn from the evidence.  See

19

United States District Court

For the Northern District of California

1  Jammal, 926 F3d at 920.  The admission of other acts evidence does

2  not violate due process where, as here, the jury could draw an

3  inference of intent from the evidence.  See Houston v Roe, 177 F3d

4  901, 910 n6 (9th Cir 1999).

5       Petitioner contends that the evidence of the jacking jags

6  scheme was too dissimilar to be admissible to show a common plan or

7  scheme.  Petitioner asserts that the jacking jags scheme involved

8  the use of a badge so as to not use force to take property, whereas

9  the current crime did involve force.  But the fact that petitioner

10 struck the victim in this case is not sufficient to distinguish the

11 two schemes.  The state court of appeal reasonably concluded that

12 the prior uncharged criminal conduct evidence was highly probative

13 in establishing petitioner's intent to rob the victim and showed a

14 common plan.  Its admission did not violate due process because the

15 jury could draw permissible inferences from the evidence.  See id.

16       Furthermore, there is no indication that the admission of

17 petitioner's statements had a "substantial and injurious effect on

18 the verdict."  Brecht, 507 US at 623.  There is nothing in the

19 record that indicates that the jury used the evidence solely as

20 proof of petitioner's bad character or that the jury drew only

21 impermissible inferences.  Moreover, ample other evidence supports

22 the jury's verdict.

23       Petitioner is not entitled to federal habeas relief on

24 his character evidence claim because the admission of the prior

25 acts was not contrary to, or involved an unreasonable determination

26 of, clearly established Supreme Court precedent, or involved an

27 unreasonable determination of the facts.  See 28 USC § 2254(d).

28
                                    20

United States District Court
For the Northern District of California

D

Petitioner claims that there was insufficient evidence to support his conviction under California Penal Code section 538(d) for unlawful use of a badge, resulting in a denial of his due process rights.  He argues that the conviction is not supported by sufficient evidence because the badge he used did not sufficiently resemble badges used by City of Salinas police officers.

1

The California Court of Appeal rejected petitioner's claim:

> The parties have not cited and we have not found through independent research any California decisions that provide guidance in determining when an unauthorized badge sufficiently resembles an authorized police officer's badge for purposes of section 538d, subdivision (b)(2).  However, to determine whether sufficient evidence supports the conviction of unlawful use of a badge, we follow a well established rule.  We "review the whole record in the light most favorable to the judgment below to determine and decide whether it discloses substantial evidence ... such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." People v Johnson (1980) 26 Cal3d 557, 578.  Under this standard, the court does not "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. [Citation.] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] People v Hatch (2000) 22 Cal4th 260, 272 (quoting Jackson v Virginia (1979) 443 US 307, 318-319).
>
> Viewing the record in the light most favorable to the judgment, we find substantial evidence to support defendant's conviction of unlawful

21

use of a badge under section 538d, subdivision
(b)(2).  Defendant implicitly concedes two
elements of the offense.  First, it is
undisputed that defendant was wearing a badge
during the incident involving Peralta. Second,
defendant does not challenge the sufficiency of
the evidence showing that he willfully used a
badge to impersonate a police officer.
Defendant only challenges the element requiring
the badge used in the offense to "so resembl[e]
the authorized badge of a peace officer as
would deceive any ordinary reasonable person
into believing that it is authorized for the
use of one who by law is given the authority of
a peace officer." § 538d, subd (b)(2).

* * *

We have examined defendant's badge and find the
prosecutor's comparison of that badge with
Officer Godwin's authorized badge, which the
officer displayed during his testimony, to be
accurate.  The prosecutor stated, "You remember
I had Officer Godwin show you his badge.  It
was a black leather oval backing with a silver
star attached in front of it.  You look at the
defendant's security badge, it's a black
leather oval backing with a silver star
attached.  Really, the only difference is the
fact that the defendant wore his around his
neck, and that the wording, if you were able to
get close enough to read the wording, is
clearly different."  Trial counsel did not
object to this description.

We do not agree with defendant that the
difference in the wording and symbols on the
two badges precluded the jury from finding that
the badge used by defendant sufficiently
"resembles the authorized badge of a peace
officer as would deceive any ordinary
reasonable person" into believing that the
badge was an authorized police officer's badge.
§ 538d, subd (b)(2).  As the prosecutor pointed
out, the two badges resemble each other in
their most visible aspects, including the shape
(oval), the color (black), and the largest
symbol (a silver star).  An ordinary reasonable
person could be deceived by these obvious
similarities, without making a detailed
comparison of the much smaller, less visible
words and symbols.

22

> Accordingly, having viewed the evidence in the light most favorable to the prosecution, we determine that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Therefore, we conclude that there is sufficient evidence to support the conviction for unlawful use of a badge.

People v Diaz, 2005 WL 941402, **11-13 (footnote omitted).

## 2

A state prisoner who alleges that the evidence in support of his state conviction was insufficient to have led a rational trier fo fact to find guilt beyond a reasonable doubt states a constitutional claim. Jackson v Virginia, 443 US 307, 321 (1979). But a federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v Borg, 982 F2d 335, 338 (9th Cir 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id (quoting Jackson, 443 US at 319).

## 3

The California Court of Appeal's determination that there was sufficient evidence to support the conviction for unlawful use of a badge was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, and neither was it based on an unreasonable determination of the facts.

23

United States District Court
For the Northern District of California

See 28 USC § 2254(d).

Petitioner's argument that the badges were too dissimilar to justify his conviction is without merit. The California Court of Appeal found that the two most visible aspects of the badges, the leather oval backing and attached silver star, were the same. The court's determination that the similarities were sufficient to support the conviction should not be disturbed. The question here is only whether, on the evidence proffered at trial, a reasonable trier of fact could have found proof of guilt beyond a reasonable doubt. See Jackson, 443 US at 324. As the court of appeal found, the similarities between the badges were marked, the differences could only have been seen from a close distance, and petitioner identified himself as a police officer to the victim. It simply cannot be said that the state court unreasonably applied the Jackson standard in rejecting petitioner's insufficient evidence claim. See Juan H v Allen, 408 F3d 1262, 1275 (9th Cir 2005). Because a reasonable trier of fact could find proof of guilt beyond a reasonable doubt, petitioner's claim fails.

E

Petitioner also seeks federal habeas relief on the ground that he was denied his Sixth Amendment right to effective assistance of counsel because of his trial counsel's failure to file a suppression motion. Petitioner argues that the viewing of the stun gun on his bed by Officer Godwin was unconstitutional under the Fourth Amendment and that his counsel's failure to file a motion to suppress statements regarding the stun gun amounted to

24

United States District Court
For the Northern District of California

ineffective assistance of counsel.

Petitioner raised the claim in a petition for a writ of habeas corpus in the California Court of Appeal.  The petition was summarily denied.

1

In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, petitioner must establish two things. First, petitioner must show that counsel's performance was deficient, ie, that it fell below an objective standard of reasonableness under prevailing professional norms.  Strickland v Washington, 466 US 668, 687-88 (1984).  Second, petitioner must establish that he was prejudiced by counsel's deficient performance, ie, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id at 694.

A claim that defense counsel failed to litigate a Fourth Amendment claim is not barred by Stone v Powell, 428 US 465, 481-82 (1976), which ordinarily bars federal habeas relief of Fourth Amendment claims unless the state did not provide an opportunity for full and fair litigation of those claims.  See Kimmelman v Morrison, 477 US 365, 373-83 (1986).  Petitioner must show, however, that: (1) the overlooked suppression motion would have been meritorious, and (2) there is a reasonable probability that the jury would have reached a different verdict absent the introduction of the unlawful evidence.  Ortiz-Sandoval v Clarke, 323 F3d 1165, 1170 (9th Cir 2003).

25

**3**

The California Court of Appeal's rejection of petitioner's state habeas petition seeking relief on the ground of ineffective assistance of counsel was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, and neither was it based on an unreasonable determination of the facts.  See 28 USC § 2254(d).

If a court can reject a claim of ineffective assistance of counsel on the basis of lack of prejudice, it should do so.  <u>Strickland</u>, 466 US at 697.  Here, petitioner fails to carry his burden of showing prejudice because he has not established that the suppression motion would have been successful.  See <u>Ortiz-Sandoval</u>, 323 F3d at 1170.  While petitioner does cite to cases in which California and other state courts have found unreasonable searches when officers peered through windows, none of the cases cited support a finding that the search at issue here was unreasonable.  Petitioner relies upon <u>People v Camacho</u>, 23 Cal 4th 824 (2000), to support his contention that he had a reasonable expectation of privacy in his room.  But <u>Camacho</u> dealt with officers peering through a window in the back of defendant's privately owned home, an area from which he had a right to exclude the public.  In contrast, petitioner's room here was on the first floor of a motel, the window was open, and the window faced a public motel path.  The authority cited by petitioner fails to establish that a motion to suppress would have been meritorious.

Even if petitioner showed that the suppression motion would have been meritorious, his ineffective assistance of counsel

**26**

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

claim would still fail because he cannot show that there is a reasonable probability that the jury would have reached a different verdict without Godwin's testimony about the stun gun. See Ortiz-Sandoval, 323 F3d at 1170. The stun gun was not a critical piece of evidence relied upon by the prosecution. While the stun gun did corroborate that petitioner was the person the victim encountered, petitioner's identity as the perpetrator was never really in question. The defense's theory was not mistaken identity, but that petitioner did not have the intent to rob the victim. There is nothing in the record to support petitioner's assertion that the jury would have reached a different verdict if the observation of the stun gun had been suppressed.

Petitioner is not entitled to federal habeas relief on his ineffective assistance of counsel claim because the state court's summary denial of the claim was not an objectively unreasonable application of the Strickland standard. See 28 USC § 2254(d); Richter v Hickman, 521 F3d 1222, 1229 (9th Cir 2008).

F

Petitioner claims that he was denied his Sixth Amendment right to proof before a jury beyond a reasonable doubt of the aggravating circumstances used to increase his sentence on the robbery conviction beyond the middle term. He argues that the court, not the jury, improperly made the findings on aggravating factors required for imposition of the upper term in violation of Blakely v Washington, 542 US 296 (2004).

27

1

The California Court of Appeal summarized the relevant facts as follows:

> The trial court struck two of the three prior strike convictions for robbery in the interest of justice under section 1385.  The trial court then sentenced defendant to a total term of 15 years on count one (robbery; § 211).  The sentence included the upper term of five years, doubled pursuant to [the Three Strikes Law], plus a five-year enhancement pursuant to section 667, subdivision (a).
>
> In deciding to impose the upper term, the trial court made several findings: "The Court finds the following factors in aggravation apply, great violence, viciousness and callousness.  The manner in which the crime was committed indicates plenty of sophistication and professionalism.  The defendant has engaged in a violent pattern which indicates a danger to society.  The defendant's prior convictions are numerous, the defendant's prior probation or parole, the Court finds no factors in mitigation."

People v Diaz, 2005 WL 941402, at *14 (footnotes omitted).

The court of appeal then summarized petitioner's **Blakely** error claim and rejected it:

> We first consider the People's argument that imposition of the upper term of five years did not violate the principles of **Blakely** because five years is less than the statutory maximum for defendant's offense.  The People explain that the statutory maximum is a Three Strikes sentence of 26 years to life, pursuant to sections 667.17 and 1170.12, subdivision (c), because the trial court found true the allegations that defendant had three prior strike convictions.  We agree that the sentence imposed is less than the statutory maximum.
>
> A trial court's decision to strike prior strike convictions does not change the facts on which a maximum statutory sentence of 25 years to life is authorized under the Three Strikes law. As our Supreme Court explained in **People v**

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1

2

3

4

5

6

> Garcia (1999) 20 Cal4th 490, "[I]n a Three
> Strikes case, as in other cases, when a court
> has struck a prior conviction allegation, it
> has not 'wipe[d] out' that conviction as though
> the defendant had never suffered it; rather,
> the conviction remains a part of the
> defendant's personal history, and a court may
> consider it when sentencing the defendant for
> other convictions, including others in the same
> proceeding." Id at 499; see also People v
> Wallace (2004) 33 Cal4th 738, 748.

7

8

9

10

11

12

13

14

> In the present case, defendant waived his right
> to a jury trial on the allegations that he had
> three prior strike convictions of robbery.  The
> trial court found the allegations true.
> Accordingly, the statutory maximum sentence for
> which defendant is eligible is 25 years to life
> under the Three Strikes law. § 1170.12, subd
> (c)(2).  The trial court's decision to strike
> two of the three prior strike convictions did
> not change the facts on which a maximum
> statutory sentence of 25 years to life is
> authorized.  Because the upper term imposed by
> the trial court is five years, less than the
> statutory maximum, the sentence did not violate
> the principles of Blakely.

15

16

People v Diaz, 2005 WL 941402, at *15 (footnotes omitted).

17

18

2

19

20

21

22

23

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by jury.  US Const amend VI.  This right to a jury trial has been made applicable to state criminal proceedings via the Fourteenth Amendment.  Duncan v Louisiana, 391 US 145, 149-50 (1968).

24

25

26

27

The Supreme Court's Sixth Amendment jurisprudence was significantly expanded by Apprendi v New Jersey, 530 US 466 (2000), and its progeny, which extended a defendant's right to trial by jury to the fact finding used to make enhanced sentencing

28

29

determinations.  "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 US at 490.  The "statutory maximum" for Apprendi purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather is the maximum he or she could impose without any additional findings.  Blakely v Washington, 542 US 296, 303-04 (2004).  The Court reaffirmed this basic principle when it determined that the federal sentencing guidelines violated the Sixth Amendment because they imposed mandatory sentencing ranges based on factual findings made by the sentencing court.  See United States v Booker, 543 US 220, 233-38 (2005).  The sentencing guidelines were unconstitutional because they required the court to impose an enhanced sentence based on factual determinations not made by the jury beyond a reasonable doubt.  Id at 243-45.

In Cunningham v California, 127 S Ct 856 (2007), the Court held that California's determinate sentencing law (DSL) violated the Sixth Amendment because it allowed the sentencing court to impose an elevated sentence based on aggravating facts that it found to exist by a preponderance of the evidence.  127 S Ct at 856, 870-71.  The sentencing court was directed under the DSL to start with a "middle term" and then move to an "upper term" only if it found aggravating factual circumstances beyond the elements of the charged offense.  Id at 862.  Concluding that the middle

**United States District Court**
For the Northern District of California

term was the relevant statutory maximum, and noting that aggravating facts were found by a judge and not the jury, the Court held that the California sentencing law violated the rule set out in <u>Apprendi</u>.  Id at 871.  Although the DSL gave judges broad discretion to identify aggravating factors, this discretion did not make the upper term the statutory maximum because the jury verdict alone did not authorize the sentence and judges did not have the discretion to choose the upper term unless it was justified by additional facts.  Id at 868-69.

Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error; it is subject to harmless-error analysis.  <u>Washington v Recuenco</u>, 548 US 212, 221-22 (2006).


3


The California Court of Appeal's rejection of petitioner's <u>Blakely</u> claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, and neither was it based on an unreasonable determination of the facts.  See 28 USC § 2254(d).

Petitioner's sentence did not violate <u>Blakely</u> because the sentence was not more than the statutory maximum the judge could impose without any additional findings.  See <u>Blakely</u>, 542 US at 303-04.  Because petitioner waived his right to a jury trial on the allegations that he had suffered three prior strike convictions and the court found the allegations to be true, it was permissible for the trial judge to take note of the prior strike convictions when

United States District Court

For the Northern District of California

1   deciding to impose the upper term sentence.  Two of the prior

2   strike convictions provided sufficient justification for imposing

3   the upper term sentence of five years without requiring the judge

4   to make any additional findings.  See id.  And the third prior

5   strike conviction provided the basis to double the base sentence

6   pursuant to the Three Strikes Law.  The fact that the trial judge

7   struck two of the prior strike convictions for purposes of the

8   Three Strikes Law does not alter the fact that those priors could

9   be used as the basis for imposing the upper term without any

10  additional findings.  Petitioners sentence did not violate <u>Blakely</u>.

11          Even if there had been a <u>Blakely</u> violation, petitioner

12  would not be entitled to federal habeas relief because it could not

13  be said that petitioner was prejudiced by the trial court's

14  sentence.  See <u>Washington</u>, 548 US at 221-22.  After petitioner

15  waived a jury trial on allegations that he suffered several prior

16  convictions, the trial judge found that petitioner had suffered

17  three prior strike convictions. This fact alone justified a

18  minimum sentence of 25 years to life.  But the trial judge struck

19  two of the priors for purposes of the Three Strikes Law and

20  sentenced petitioner to 15 years.  Because the sentence petitioner

21  received was much shorter than the sentence he could have received

22  based on the facts found by the jury and the facts of the prior

23  strike convictions properly found by the trial judge, it cannot be

24  said that petitioner was prejudiced by a <u>Blakely</u> error.

25          Petitioner is not entitled to federal habeas relief based

26  on his <u>Blakely</u> claim because the state court's rejection of the

27  claims was not contrary to, or involved an unreasonable

28

determination of, clearly established Supreme Court precedent, or involved an unreasonable determination of the facts.  See 28 USC § 2254(d).


                                      IV

        For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

        The clerk shall enter judgment in favor of respondent and close the file.

        SO ORDERED.


                        _____
                        VAUGHN R WALKER
                        United States District Chief Judge